# TABLE OF CONTENTS

I. JURISDICTION AND VENUE ........................................................................................ 2

II. APPLICABILITY .......................................................................................................... 2

III. DEFINITIONS ............................................................................................................. 4

IV. CIVIL PENALTY .......................................................................................................... 6

V. COMPLIANCE REQUIREMENTS .................................................................................. 7

VI. REPORTING REQUIREMENTS .................................................................................. 10

VII. STIPULATED PENALTIES ....................................................................................... 13

VIII. FORCE MAJEURE .................................................................................................. 17

IX. DISPUTE RESOLUTION ........................................................................................... 19

X. INFORMATION COLLECTION AND RETENTION ...................................................... 22

XI. EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS ......................................... 25

XII. COSTS ..................................................................................................................... 26

XIII. NOTICES ................................................................................................................ 27

XIV. EFFECTIVE DATE .................................................................................................. 28

XV. RETENTION OF JURISDICTION ............................................................................. 28

XVI. MODIFICATION ..................................................................................................... 29

XVII. TERMINATION ..................................................................................................... 29

XIII. PUBLIC PARTICIPATION ..................................................................................... 30

XIX. SIGNATORIES/SERVICE ....................................................................................... 31

**XX.** INTEGRATION ............................................................................................................. 31

**XXI.** FINAL JUDGMENT .................................................................................................. 32

APPENDIX A.  THE WEST SIDE SUMP PUMP STATION WORK PLAN

Plaintiff United States of America, on behalf of the United States Environmental Protection Agency ("EPA"), has filed a Complaint in this action concurrently with this Consent Decree, alleging that Defendant Great Lakes Chemical Corporation, violated Section 301 of the Clean Water Act ("Act"), 33 U.S.C. § 1311.

The Complaint against Defendant alleges that Defendant violated the Act by discharging effluent that exceed the limits contained in NPDES permit AR0001171 at its chemical production facility ("Facility") in Union County, Arkansas. These violations are alleged to include exceedances of permitted limits for Chlorides and Total Dissolved Solids that occurred beginning on November 10, 2010, and continue to the present.

The Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and will avoid litigation between the Parties and that this Consent Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, before the taking of any testimony, without the adjudication or admission of any issue of fact or law except as provided in Section I, and with the consent of the Parties, IT IS HEREBY ADJUDGED, ORDERED, AND DECREED as follows:

## I. JURISDICTION AND VENUE

1.      This Court has jurisdiction over the subject matter of this action, pursuant to 28 U.S.C. §§ 1331, 1345, and 1355, and Section 309(b) of the Act, 33 U.S.C. § 1319(b), and over the Parties. Venue lies in this District pursuant to Section 309(b) of the Act, 33 U.S.C. § 1319(b) and 28 U.S.C. §§ 1391 and 1395(a), because this is the district where Defendant is located and the district in which the violations occurred. For purposes of this Decree, or any action to enforce this Decree, Defendant consents to the Court's jurisdiction over this Consent Decree and over Defendant and consents to venue in this judicial district.

2.      For purposes of this Consent Decree, Defendant agrees that the Complaint states claims upon which relief may be granted pursuant to Section 309 of the Act, 33 U.S.C. § 1319.

## II. APPLICABILITY

3.      The obligations of this Consent Decree apply to and are binding upon the United States and upon Defendant and any successors, assignees, or other entities or persons otherwise bound by law.

4.      No transfer of ownership or operation of the Facility, whether in compliance with the procedures of this Paragraph or otherwise, shall relieve Defendant of its obligation to ensure that the terms of the Decree are implemented. At least 30 Days prior to such transfer, Defendant shall provide a copy of this Consent Decree to the proposed transferee and

-2-

shall simultaneously provide written notice of the prospective transfer, together with a copy of the proposed written agreement, to EPA Region 6, the United States Attorney for the Western District of Arkansas, and the United States Department of Justice, in accordance with Section XIII of this Decree (Notices). Any attempt to transfer ownership or operation of the Facility without complying with this Paragraph constitutes a violation of this Decree. Provided, however, that Paragraph 4 shall not apply to transfers of security interests which do not result in a change of ownership or control of the Facility in any respect and are meant solely to facilitate financing.

5.      Defendant shall provide a copy of this Consent Decree to all officers, employees, and agents whose duties might reasonably include compliance with any provision of this Decree, as well as to any contractor retained to perform work required under this Consent Decree. Defendant shall condition any such contract upon performance of the work in conformity with the terms of this Consent Decree.

6.      In any action to enforce this Consent Decree, Defendant shall not raise as a defense the failure by any of its officers, directors, employees, agents, or contractors to take any actions necessary to comply with the provisions of this Consent Decree.

-3-

## III. DEFINITIONS

7.      Terms used in this Consent Decree that are defined in the Act or in regulations promulgated pursuant to the Act shall have the meanings assigned to them in the Act or such regulations, unless otherwise provided in this Decree. Whenever the terms set forth below are used in this Consent Decree, the following definitions shall apply:

a.      "Complaint" shall mean the complaint filed by the United States in this action;

b.      "Consent Decree" or "Decree" shall mean this Decree and all appendices attached hereto;

c.      "Day" shall mean a calendar day unless expressly stated to be a business day. In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period shall run until the close of business of the next business day;

d.      "Defendant" shall mean the person or entity named in the Complaint;

e.      "EPA" shall mean the United States Environmental Protection Agency and any of its successor departments or agencies;

f.      "Effective Date" shall have the definition provided in Section XIV;

-4-

g.     "Facility" shall mean Defendant's chemical production plant located at 2226 Haynesville Highway in Union County, Arkansas;

h.     "Joint Pipeline" shall mean the pipeline being constructed by Defendant in conjunction with the El Dorado Water Utility, Lion Oil Company, and El Dorado Chemical Company to carry wastewater to the Ouachita River and permitted under NPDES permit AR0050296;

i.     "Paragraph" shall mean a portion of this Decree identified by an arabic numeral;

j.     "Parties" shall mean the United States and Defendant;

k.     "Section" shall mean a portion of this Decree identified by a roman numeral;

l.     "State" shall mean the State of Arkansas;

m.     "United States" shall mean the United States of America, acting on behalf of EPA;

n.     "West Side Sump" shall mean the sump collection area on the west side of the Facility where stormwater runoff and other authorized non-stormwater flows are directed and, under normal operating conditions, pass through to discharge at Outfall 003.

-5-

## IV. CIVIL PENALTY

8.      Within 30 Days after the Effective Date of this Consent Decree, Defendant shall pay the sum of Three Hundred Thousand Dollars and No Cents ($300,000.00) as a civil penalty, together with interest accruing from the date on which the Consent Decree is lodged with the Court, at the rate specified in 28 U.S.C. § 1961 as of the date of lodging.

9.      Defendant shall pay the civil penalty due by FedWire Electronic Funds Transfer ("EFT") to the U.S. Department of Justice in accordance with written instructions to be provided to Defendant, following entry of the Consent Decree, by the Financial Litigation Unit of the U.S. Attorney's Office for the Western District of Arkansas, 414 Parker Avenue, Fort Smith, AR 72901, (479) 783-5125. At the time of payment, Defendant shall send a copy of the EFT authorization form and the EFT transaction record, together with a transmittal letter, which shall state that the payment is for the civil penalty owed pursuant to the Consent Decree in *United States v. Great Lakes Chemical Corporation*, and shall reference the civil action number and DOJ case number 90-5-1-1-10527, to the United States in accordance with Section XIII of this Decree (Notices); by email to acctsreceivable.CINWD@epa.gov; and by mail to:

> EPA Cincinnati Finance Office
> 26 Martin Luther King Drive
> Cincinnati, Ohio 45268

10.     Defendant shall not deduct any penalties paid under this Decree pursuant to this Section or Section VII (Stipulated Penalties) in calculating its federal income tax.

## V. COMPLIANCE REQUIREMENTS

### *Pipeline Completion*

11.     Defendant is party to an agreement between and among Lion Oil Company, El Dorado Chemical Company, and the City of El Dorado Water Utility under which a pipeline meant to carry effluent from facilities owned and/or operated by the four parties from their respective facilities to the Ouachita River is being constructed.

12.     Defendant will take all steps within its control, or the control of its contractors or agents, to complete the Joint Pipeline on or before August 31, 2013.

13.     Defendant will take no action to impede the completion of the Joint Pipeline.

### *Cessation of Pipeline Construction*

14.     In the event that an order of any court results in a cessation of construction of the Joint Pipeline lasting more than 120 Days, or the pipeline is not completed by August 31, 2013, for any reason, Defendant shall submit to EPA an alternate plan for compliance with Defendant's NPDES permit.

15.     The plan will be submitted to EPA on the 60th Day following the 120th Day of the cessation of construction or the 60th Day after August 31, 2013, whichever is applicable.

16.     EPA will approve or disapprove the plan in accordance with Paragraphs 23-28 of this Consent Decree.

-7-

17. Failure to timely submit an alternate compliance plan or to implement the alternate compliance plan as approved shall be subject to stipulated penalties as provided in Paragraph 39.

### West Side Sump Project

18. Attached hereto as Appendix A is a detailed plan for the construction and operation of a system of storage and conveyance capable of transferring wastewater flow from the West Side Sump to the Joint Pipeline ("West Side Sump Project").

19. Upon completion, the West Side Sump project shall be capable of capturing all dry weather flows reaching the West Side Sump and conveying such flows to the Joint Pipeline.

20. Upon completion, the West Side Sump Project shall be capable of capturing and storing all flows from a 24-hour, two inch rain event and conveying such flows to the Joint Pipeline.

21. No later than August 31, 2013, Defendant shall complete construction and, subject to the availability of the Joint Pipeline, shall commence operation of the West Side Sump Project.

22. Beginning in July of 2012, Defendant began capturing dry weather flow at the West Side Sump and disposing of the collected effluent through its permitted underground injection control wells. Defendant shall continue this practice until the West Side Sump Project becomes operational.

23.    Approval of Deliverables. After review of any plan, report, or other item that is required to be submitted pursuant to this Consent Decree, EPA shall in writing: a) approve the submission; b) approve the submission upon specified conditions; c) approve part of the submission and disapprove the remainder; or d) disapprove the submission.

24.    If the submission is approved pursuant to Paragraph 23.a, Defendant shall take all actions required by the plan, report, or other document, in accordance with the schedules and requirements of the plan, report, or other document, as approved. If the submission is conditionally approved or approved only in part, pursuant to Paragraph 23.b or .c, Defendant shall, upon written direction from EPA, take all actions required by the approved plan, report, or other item that EPA determines are technically severable from any disapproved portions, subject to Defendant's right to dispute only the specified conditions or the disapproved portions, under Section IX of this Decree (Dispute Resolution).

25.    If the submission is disapproved in whole or in part pursuant to Paragraph 23.c or d, Defendant shall, within 45 Days or such other time as the Parties agree to in writing, correct all deficiencies and resubmit the plan, report, or other item, or disapproved portion thereof, for approval, in accordance with the preceding Paragraphs. If the resubmission is approved in whole or in part, Defendant shall proceed in accordance with the preceding Paragraph.

26.    Any stipulated penalties applicable to the original submission, as provided in Section VII of this Decree, shall accrue during the 45-Day period or other specified period, but shall not be payable unless the resubmission is untimely or is disapproved in whole or in part;

-9-

provided that, if the original submission was so deficient as to constitute a material breach of Defendant's obligations under this Decree, the stipulated penalties applicable to the original submission shall be due and payable notwithstanding any subsequent resubmission.

27.     If a resubmitted plan, report, or other item, or portion thereof, is disapproved in whole or in part, EPA may again require Defendant to correct any deficiencies, in accordance with the preceding Paragraphs, or may itself correct any deficiencies, subject to Defendant's right to invoke Dispute Resolution and the right of EPA to seek stipulated penalties as provided in the preceding Paragraphs.

28.     Permits. Where any compliance obligation under this Section requires Defendant to obtain a federal, state, or local permit or approval, Defendant shall submit timely and complete applications and take all other actions necessary to obtain all such permits or approvals, consistent with applicable laws or regulations.

## VI. REPORTING REQUIREMENTS

29.     Defendant shall submit the following reports:

a.      Within 30 Days after the end of each calendar quarter (i.e., by April 30, July 30, October 30, and January 30) after lodging of this Consent Decree, until termination of this Decree pursuant to Section XVII, Defendant shall submit by first class mail or Federal Express and by electronic mail a report for the preceding quarter that shall detail the status of any construction or compliance measures; any problems encountered or anticipated, together with implemented or proposed solutions; the status of any permit applications; and any reports submitted to state agencies.

b.      The report shall include a description of any non-compliance with the requirements of this Consent Decree and an explanation of the likely cause of such non-compliance. The report shall detail the remedial steps taken, or to be taken, to prevent or minimize such non-compliance.I f Defendant violates, or has reason to believe that it may violate, any requirement of this Consent Decree. Defendant shall notify the United States of such violation and its likely duration, in writing, within ten working Days after the Day Defendant first becomes aware of the violation, with an explanation of the violation's likely cause and of the remedial steps taken, or to be taken, to prevent or minimize such violation. If the cause of a violation cannot be fully explained at the time the report is due, Defendant shall so state in the report. Defendant shall investigate the cause of the violation and shall then submit an amendment to the report, including a full explanation of the cause of the violation, within 30 Days of the Day Defendant becomes aware of the cause of the violation. Nothing in this Paragraph or the following Paragraph relieves Defendant of its obligation to provide the notice required by Section VIII of this Consent Decree (Force Majeure).

30.      Whenever any violation of this Consent Decree or of any applicable permits or any other event affecting Defendant's performance under this Decree, or the performance of its Facility, may pose an immediate threat to the public health or welfare or the environment, Defendant shall notify EPA and the State orally or by electronic or facsimile transmission as soon as possible, but no later than 24 hours after Defendant first knew of the violation or event. This procedure is in addition to the requirements set forth in the preceding Paragraph.

31.     All reports shall be submitted to the persons designated in Section XIII of

this Consent Decree (Notices).

32.     Each report submitted by Defendant under this Section shall be signed by

an official of the submitting party, a s defined in 40 C.F.R. § 122.22(b), and include the following

certification:

> I certify under penalty of law that this document and all
> attachments were prepared under my direction or supervision in
> accordance with a system designed to assure that qualified
> personnel properly gather and evaluate the information submitted.
> Based on my inquiry of the person or persons who manage the
> system, or those persons directly responsible for gathering the
> information, the information submitted is, to the best of my
> knowledge and belief, true, accurate, and complete.  I am aware
> that there are significant penalties for submitting false information,
> including the possibility of fine and imprisonment for knowing
> violations.

This certification requirement does not apply to emergency or similar notifications where

compliance would be impractical.

33.     The reporting requirements of this Consent Decree do not relieve

Defendant of any reporting obligations required by the Act or implementing regulations, or by

any other federal, state, or local law, regulation, permit, or other requirement.

34.     Any information provided pursuant to this Consent Decree may be used

by the United States in any proceeding to enforce the provisions of this Consent Decree and as

otherwise permitted by law.

-12-

## VII.  STIPULATED PENALTIES

35.     Defendant shall be liable for stipulated penalties to the United States for violations of this Consent Decree as specified below, unless excused under Section VIII (Force Majeure). A violation includes failing to perform any obligation required by the terms of this Decree, including any work plan or schedule approved under this Decree, according to all applicable requirements of this Decree and within the specified time schedules established by or approved under this Decree.

36.     Late Payment of Civil Penalty

If Defendant fails to pay the civil penalty required to be paid under Section IV of this Decree (Civil Penalty) when due, Defendant shall pay a stipulated penalty of $3000 per Day for each Day that the payment is late.

37.     West Side Sump Project

If Defendant fails to complete the West Side Sump Project required under Section V of this Decree (Compliance Requirements) on or before August 31, 2013, Defendant shall pay the following stipulated penalties for each Day until operation of the West Side Sump Project commences.  In the Event that Joint Pipeline completion is delayed past August 31, 2013, stipulated penalties under this Paragraph will not begin to run until the Day that the Joint Pipeline becomes available for use:

| Penalty Per Day | Period of Noncompliance |
|---|---|
| $1,500 | 1st through 14th Day |

-13-

| $2,500 | 15th through 30th Day |
| $3,000 | 31st Day and beyond |

38. **Effluent Violations**

Beginning March 1, 2014, and after the NPDES permit then in effect for the Facility has been renewed and/or modified to incorporate limits at the overflow from the West Side Sump and to remove limits from Outfall 003 or after such modification is disapproved by ADEQ, Defendant shall pay the following stipulated penalties for each violation of any effluent limit contained in any NPDES permit then in effect for the Facility:

| Penalty Per Violation of Monthly Average Limit | Period of Noncompliance (from March 1, 2014) |
| --- | --- |
| $1,500 | 1st through 3rd Calendar Month |
| $8,000 | 4th through 6th Calendar Month |
| $15,000 | 7th Calendar Month and beyond |

| Penalty Per Violation of Daily Maximum Limit | Period of Noncompliance (from March 1, 2014) |
| --- | --- |
| $250 | 1st through 90th Day |
| $1,000 | 91th through 120th Day |
| $2,000 | 121st Day and beyond |

-14-

39.     Alternate Compliance Plan

If an alternate compliance plan is required and approved under Section V of this Decree (Compliance Requirements), Defendant shall pay the following stipulated penalties for each violation of such approved alternate compliance plan.

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $1,000 | 1st through 30th Day |
| $1,500 | 31th through 60th Day |
| $2,000 | 61st Day and beyond |

40. Reporting Requirements.

The following stipulated penalties shall accrue per violation per Day for each violation of the reporting requirements of Section VI of this Consent Decree:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $1,000 | 1st through 14th Day |
| $1,500 | 15th through 30th Day |
| $2,000 | 31st Day and beyond |

41. Stipulated penalties under this Section shall begin to accrue on the Day after performance is due or on the Day a violation occurs, whichever is applicable, and shall continue to accrue until performance is satisfactorily completed or until the violation ceases. Stipulated penalties shall accrue simultaneously for separate violations of this Consent Decree.

-15-

42. Defendant shall pay any stipulated penalty within 30 Days of receiving the United States' written demand.

43. The United States may in the unreviewable exercise of its discretion, reduce or waive stipulated penalties otherwise due it under this Consent Decree.

44. Stipulated penalties shall continue to accrue during any Dispute Resolution, but need not be paid until the following:

a.      If the dispute is resolved by agreement or by a decision of EPA that is not appealed to the Court, Defendant shall pay accrued penalties determined to be owing, together with interest, to the United States within 30 Days of the effective date of the agreement or the receipt of EPA's decision or order.

b.      If the dispute is appealed to the Court and the United States prevails in whole or in part, Defendant shall pay all accrued penalties determined by the Court to be owing, together with interest, within 60 Days of receiving the Court's decision or order, except as provided in subparagraph c, below.

c.      If any Party appeals the District Court's decision, Defendant shall pay all accrued penalties determined to be owing, together with interest, within 15 Days of receiving the final appellate court decision.

45.      Defendant shall pay stipulated penalties owing to the United States in the manner set forth and with the confirmation notices required by Paragraph 9, except that the transmittal letter shall state that the payment is for stipulated penalties and shall state for which violation(s) the penalties are being paid.

-16-

46. If Defendant fails to pay stipulated penalties according to the terms of this Consent Decree, Defendant shall be liable for interest on such penalties, as provided for in 28 U.S.C. § 1961, accruing as of the date payment became due. Nothing in this Paragraph shall be construed to limit the United States from seeking any remedy otherwise provided by law for Defendant's failure to pay any stipulated penalties.

47. Subject to the provisions of Section XI of this Consent Decree (Effect of Settlement/Reservation of Rights), the stipulated penalties provided for in this Consent Decree shall be in addition to any other rights, remedies, or sanctions available to the United States for Defendant's violation of this Consent Decree or applicable law. Where a violation of this Consent Decree is also a violation of the Act, Defendant shall be allowed a credit, for any stipulated penalties paid, against any statutory penalties imposed for such violation.

## VIII. FORCE MAJEURE

48. "Force majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of Defendant, of any entity controlled by Defendant, or of Defendant's contractors, that delays or prevents the performance of any obligation under this Consent Decree despite Defendant's best efforts to fulfill the obligation. The requirement that Defendant exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure event and best efforts to address the effects of any such event (a) as it is occurring and (b) after it has occurred to prevent or minimize any resulting delay to the greatest extent possible. "Force Majeure" does not include Defendant's

financial inability to perform any obligation under this Consent Decree or the inability to obtain a modification to any effluent limits in effect as of the Effective Date.

49.     If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree, whether or not caused by a force majeure event, Defendant shall provide notice orally or by electronic or facsimile transmission to the United States, within 72 hours of when Defendant first knew that the event might cause a delay. Within 7 Days thereafter, Defendant shall provide in writing to EPA an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; Defendant's rationale for attributing such delay to a force majeure event if it intends to assert such a claim; and a statement as to whether, in the opinion of Defendant, such event may cause or contribute to an endangerment to public health, welfare or the environment. Defendant shall include with any notice all available documentation supporting the claim that the delay was attributable to a force majeure. Failure to comply with the above requirements shall preclude Defendant from asserting any claim of force majeure for that event for the period of time of such failure to comply, and for any additional delay caused by such failure. Defendant shall be deemed to know of any circumstance of which Defendant, any entity controlled by Defendant, or Defendant's contractors knew or should have known.

50.     If EPA agrees that the delay or anticipated delay is attributable to a force majeure event, the time for performance of the obligations under this Consent Decree that are

-18-

affected by the force majeure event will be extended by EPA for such time as is necessary to complete those obligations. An extension of the time for performance of the obligations affected by the force majeure event shall not, of itself, extend the time for performance of any other obligation. EPA will notify Defendant in writing of the length of the extension, if any, for performance of the obligations affected by the force majeure event.

51.    If EPA does not agree that the delay or anticipated delay has been or will be caused by a force majeure event, EPA will notify Defendant in writing of its decision.

52.    If Defendant elects to invoke the dispute resolution procedures set forth in Section IX (Dispute Resolution), it shall do so no later than 15 Days after receipt of EPA's notice. In any such proceeding, Defendant shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a force majeure event, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that Defendant complied with the requirements of Paragraph 49, above. If Defendant carries this burden, the delay at issue shall be deemed not to be a violation by Defendant of the affected obligation of this Consent Decree identified to EPA and the Court.

## IX. DISPUTE RESOLUTION

53.    Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree. Defendant's failure to seek resolution of a dispute under this Section shall preclude Defendant from raising any such issue as

-19-

a defense to an action by the United States to enforce any obligation of Defendant arising under this Decree.

54.    Informal Dispute Resolution.  Any dispute subject to Dispute Resolution under this Consent Decree shall first be the subject of informal negotiations.  The dispute shall be considered to have arisen when Defendant sends the United States a written Notice of Dispute.  Such Notice of Dispute shall state clearly the matter in dispute.  The period of informal negotiations shall not exceed 30 Days from the date the dispute arises, unless that period is modified by written agreement.  If the Parties cannot resolve a dispute by informal negotiations, then the position advanced by the United States shall be considered binding unless, within 15 Days after the conclusion of the informal negotiation period, Defendant invokes formal dispute resolution procedures as set forth below.

55.    Formal Dispute Resolution.  Defendant shall invoke formal dispute resolution procedures, within the time period provided in the preceding Paragraph, by serving on the United States a written Statement of Position regarding the matter in dispute.  The Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting Defendant's position and any supporting documentation relied upon by Defendant.

56.    The United States shall serve its Statement of Position within 45 Days of receipt of Defendant's Statement of Position.  The United States' Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting that position and any supporting documentation relied upon by the United States.  The United States'

-20-

Statement of Position shall be binding on Defendant, unless Defendant files a motion for judicial review of the dispute in accordance with the following Paragraph.

57.     Defendant may seek judicial review of the dispute by filing with the Court and serving on the United States, in accordance with Section XIII of this Consent Decree (Notices), a motion requesting judicial resolution of the dispute. The motion must be filed within 15 Days of receipt of the United States' Statement of Position pursuant to the preceding Paragraph. The motion shall contain a written statement of Defendant's position on the matter in dispute, including any supporting factual data, analysis, opinion, or documentation, and shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly implementation of the Consent Decree.

58.     The United States shall respond to Defendant's motion within the time period allowed by the Local Rules of this Court. Defendant may file a reply memorandum, to the extent permitted by the Local Rules.

59.     Standard of Review

a.     Disputes Concerning Matters Accorded Record Review. Except as otherwise provided in this Consent Decree, in any dispute brought under Paragraph 55 pertaining to the adequacy or appropriateness of plans, procedures to implement plans, schedules or any other items requiring approval by EPA under this Consent Decree; the adequacy of the performance of work undertaken pursuant to this Consent Decree; and all other disputes that are accorded review on the administrative record under applicable principles of administrative law,

-21-

Defendant shall have the burden of demonstrating, based on the administrative record, that the position of the United States is arbitrary and capricious or otherwise not in accordance with law.

      b.    Other Disputes. Except as otherwise provided in this Consent Decree, in any other dispute brought under Paragraph 55, Defendant shall bear the burden of demonstrating that its position complies with this Consent Decree.

      60.    The invocation of dispute resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of Defendant under this Consent Decree, unless and until final resolution of the dispute so provides. Stipulated penalties with respect to the disputed matter shall continue to accrue from the first Day of noncompliance, but payment shall be stayed pending resolution of the dispute as provided in Paragraph 44. If Defendant does not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section VII (Stipulated Penalties).

## X. INFORMATION COLLECTION AND RETENTION

      61.    The United States and its representatives, including attorneys, contractors, and consultants, shall have the right of entry into any facility covered by this Consent Decree, at all reasonable times, upon presentation of credentials, to:

      a.    monitor the progress of activities required under this Consent Decree;

      b.    verify any data or information submitted to the United States in accordance with the terms of this Consent Decree;

         c.     obtain samples and, upon request, splits of any samples taken by Defendant or its representatives, contractors, or consultants;

         d.     obtain documentary evidence, including photographs and similar data; and

         e.     assess Defendant's compliance with this Consent Decree.

62.     Upon request, Defendant shall provide EPA or its authorized representatives splits of any samples taken by Defendant. Upon request, EPA shall provide Defendant splits of any samples taken by EPA. In either case, the requesting Party shall provide its own bottles and other necessary supplies.

63.     Until five years after the termination of this Consent Decree, Defendant shall retain, and shall instruct its contractors and agents to preserve, all non-identical copies of all documents, records, or other information (including documents, records, or other information in electronic form) in its or its contractors' or agents' possession or control, or that come into its or its contractors' or agents' possession or control, and that relate in any manner to Defendant's performance of its obligations under this Consent Decree. This information-retention requirement shall apply regardless of any contrary corporate or institutional policies or procedures. At any time during this information-retention period, upon request by the United States, Defendant shall provide copies (which may be in .pdf, .jpeg, .tif, or other electronic format) of any documents, records, or other information required to be maintained under this Paragraph.

64.     At the conclusion of the information-retention period provided in the preceding Paragraph, Defendant shall notify the United States at least 90 Days prior to the destruction of any documents, records, or other information subject to the requirements of the preceding Paragraph and, upon request by the United States, Defendant shall deliver any such documents, records, or other information to EPA. Defendant may assert that certain documents, records, or other information is privileged under the attorney-client privilege or any other privilege recognized by federal law. If Defendant asserts such a privilege, it shall provide the following: (1) the title of the document, record, or information; (2) the date of the document, record, or information; (3) the name and title of each author of the document, record, or information; (4) the name and title of each addressee and recipient; (5) a description of the subject of the document, record, or information; and (6) the privilege asserted by Defendant. However, no documents, records, or other information created or generated pursuant to the requirements of this Consent Decree shall be withheld on grounds of privilege.

65.     Defendant may also assert that information required to be provided under this Section is protected as Confidential Business Information ("CBI") under 40 C.F.R. Part 2. As to any information that Defendant seeks to protect as CBI, Defendant shall follow the procedures set forth in 40 C.F.R. Part 2.

66.     By entering into this Consent Decree, Defendant does not waive any privilege, properly founded in law, that may exist as to any document within its custody or control.

-24-

67. This Consent Decree in no way limits or affects any right of entry and inspection, or any right to obtain information, held by the United States or the State pursuant to applicable federal or state laws, regulations, or permits, nor does it limit or affect any duty or obligation of Defendant to maintain documents, records, or other information imposed by applicable federal or state laws, regulations, or permits.

## XI. EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

68. This Consent Decree resolves the civil claims of the United States for the violations alleged in the Complaint filed in this action through the date of lodging.

69. The United States reserves all legal and equitable remedies available to enforce the provisions of this Consent Decree, except as expressly stated in Paragraph 68. This Consent Decree shall not be construed to limit the rights of the United States to obtain penalties or injunctive relief under the Act or implementing regulations, or under other federal or state laws, regulations, or permit conditions, except as expressly specified in Paragraph 68. The United States further reserves all legal and equitable remedies to address any imminent and substantial endangerment to the public health or welfare or the environment arising at, or posed by, Defendant's Facility, whether related to the violations addressed in this Consent Decree or otherwise.

70. In any subsequent administrative or judicial proceeding initiated by the United States for injunctive relief, civil penalties, or other appropriate relief relating to the Facility, Defendant shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim preclusion, claim-

-25-

splitting, or other defenses based upon any contention that the claims raised by the United States in the subsequent proceeding were or should have been brought in the instant case, except with respect to claims that have been specifically resolved pursuant to Paragraph 68 of this Section.

71.     This Consent Decree is not a permit, or a modification of any permit, under any federal, State, or local laws or regulations. Defendant is responsible for achieving and maintaining complete compliance with all applicable federal, State, and local laws, regulations, and permits; and Defendant's compliance with this Consent Decree shall be no defense to any action commenced pursuant to any such laws, regulations, or permits, except as set forth herein. The United States does not, by its consent to the entry of this Consent Decree, warrant or aver in any manner that Defendant's compliance with any aspect of this Consent Decree will result in compliance with provisions of the Act or with any other provisions of federal, State, or local laws, regulations, or permits.

72.     This Consent Decree does not limit or affect the rights of Defendant or of the United States against any third parties, not party to this Consent Decree, nor does it limit the rights of third parties, not party to this Consent Decree, against Defendant, except as otherwise provided by law.

73.     This Consent Decree shall not be construed to create rights in, or grant any cause of action to, any third party not party to this Consent Decree.

## XII. COSTS

74.     The Parties shall bear their own costs of this action, including attorneys' fees, except that the United States shall be entitled to collect the costs (including attorneys' fees)

-26-

incurred in any action necessary to collect any portion of the civil penalty or any stipulated

penalties due but not paid by Defendant.

## XIII. NOTICES

75.     Unless otherwise specified herein, whenever notifications, submissions, or

communications are required by this Consent Decree, they shall be made in writing and

addressed as follows:

To the United States:

Chief, Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
Box 7611 Ben Franklin Station
Washington, D.C. 20044-7611
Re: DOJ No. 90-5-1-1-10527
and

Division Director
Compliance Assurance and Enforcement Division
U.S. Environmental Protection Agency, Region 6
1445 Ross Ave., Suite 1200 (6RC-EW)
Dallas, TX 75202

To EPA:

Division Director
Compliance Assurance and Enforcement Division
U.S. Environmental Protection Agency, Region 6
1445 Ross Ave., Suite 1200 (6RC-EW)
Dallas, TX 75202

To Defendant(s):

Billie S. Flaherty, Esq.
Senior Vice President, General Counsel and Corporate Secretary
Chemtura Corporation
199 Benson Road
Middlebury, CT 06749

76.     Any Party may, by written notice to the other Parties, change its

designated notice recipient or notice address provided above.

77.     Notices submitted pursuant to this Section shall be deemed submitted

upon receipt, unless otherwise provided in this Consent Decree or by mutual agreement of the

Parties in writing.

## XIV. EFFECTIVE DATE

78.     The Effective Date of this Consent Decree shall be the date upon which

this Consent Decree is entered by the Court or a motion to enter the Consent Decree is granted,

whichever occurs first, as recorded on the Court's docket.

## XV. RETENTION OF JURISDICTION

79.     The Court shall retain jurisdiction over this case until termination of this

Consent Decree, for the purpose of resolving disputes arising under this Decree or entering

orders modifying this Decree, pursuant to Sections IX and XVI, or effectuating or enforcing

compliance with the terms of this Decree.

.

-28-

## XVI. MODIFICATION

80.     The terms of this Consent Decree, including any attached appendices, may be modified only by a subsequent written agreement signed by all the Parties. Where the Parties agree that a modification constitutes a material change to this Decree, it shall be effective only upon approval by the Court.

81.     Any disputes concerning modification of this Decree shall be resolved pursuant to Section IX of this Decree (Dispute Resolution); provided, however, that, instead of the burden of proof provided by Paragraph 59, the Party seeking the modification bears the burden of demonstrating that it is entitled to the requested modification in accordance with Federal Rule of Civil Procedure 60(b).

## XVII. TERMINATION

82.     After Defendant has completed the requirements of Section V (Compliance Requirements) of this Decree, has thereafter maintained compliance with this Consent Decree and Defendant's permit for a period of 12 months and has paid the civil penalty and any accrued stipulated penalties as required by this Consent Decree, Defendant may serve upon the United States a Request for Termination, stating that Defendant has satisfied those requirements, together with all necessary supporting documentation.

83.     Satisfactory compliance means the operation of the Joint Pipeline such that all effluent discharged by Defendant to the Joint Pipeline is carried to the Ouachita River without discharge or release except from the Joint Pipeline's permitted outfall, operation of the

-29-

West Side Sump Project such that all wastewater is transferred from the West Side Sump to the Joint Pipeline, as set forth in Appendix A, without discharge or release except to the Joint Pipeline, and the timely submission of all reports. In the event that the Joint Pipeline is delayed and Defendant is required to pursue an alternate compliance plan as provided in Section V (Compliance Requirements), satisfactory compliance means the completion and operation of all provisions contained in the approved alternate compliance plan for a period of 12 months and the timely submission of all reports.

84.     Following receipt by the United States of Defendant's Request for Termination, the Parties shall confer informally concerning the Request and any disagreement that the Parties may have as to whether Defendant has satisfactorily complied with the requirements for termination of this Consent Decree. If the United States agrees that the Decree may be terminated, the Parties shall submit, for the Court's approval, a joint stipulation terminating the Decree.

85.     If the United States does not agree that the Decree may be terminated, Defendant may invoke Dispute Resolution under Section IX of this Decree.

## XVIII. PUBLIC PARTICIPATION

86.     This Consent Decree shall be lodged with the Court for a period of not less than 30 Days for public notice and comment in accordance with 28 C.F.R. § 50.7. The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations indicating that the Consent Decree is inappropriate, improper, or inadequate. Defendant consents to entry of this Consent Decree without

-30-

further notice and agrees not to withdraw from or oppose entry of this Consent Decree by the Court or to challenge any provision of the Decree, unless the United States has notified Defendant in writing that it no longer supports entry of the Decree.

## XIX. SIGNATORIES/SERVICE

87.     Each undersigned representative of Defendant and the Deputy Section Chief for the Environmental Enforcement Section, Environment and Natural Resources Division of the Department of Justice certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind the Party he or she represents to this document.

88.     This Consent Decree may be signed in counterparts, and its validity shall not be challenged on that basis.  Defendant agrees to accept service of process by mail with respect to all matters arising under or relating to this Consent Decree and to waive the formal service requirements set forth in Rules 4 and 5 of the Federal Rules of Civil Procedure and any applicable Local Rules of this Court including, but not limited to, service of a summons.

## XX. INTEGRATION

89.    This Consent Decree constitutes the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in the Decree and supercedes all prior agreements and understandings, whether oral or written, concerning the settlement embodied herein.  No other document, nor any representation, inducement, agreement, understanding, or promise, constitutes any part of this Decree or the settlement it represents, nor shall it be used in construing the terms of this Decree.

### XXI.  FINAL JUDGMENT

90.    Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final Judgment of the Court as to the United States and Defendant.

Dated and entered this 27 day of August 2013.


UNITED STATES DISTRICT JUDGE
Western District of Arkansas

-32-

# THIS PAGE INTENTIONALLY LEFT BLANK

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of <u>United States v.</u>
<u>Great Lakes Chemical Corporation</u>.

FOR PLAINTIFF UNITED STATES OF AMERICA:

Date: July 1 2013

NATHANIEL DOUGLAS
Deputy Section Chief
Environmental Enforcement Section

Date: July 1, 2013

BRANDON ROBERS
Trial Attorney
Environmental Enforcement Section
Environmental and Natural Resources Division
United States Department of Justice
P.O. Box 761
Washington, D.C. 20044-7611
Phone: (202) 514-5292
Facsimile: (202) 616-6584

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of <u>United States v. Great Lakes Chemical Corporation</u>.

FOR UNITED STATES ENVIRONMENTAL PROTECTION AGENCY:

Date: __6 · 26 · 13__

JOHN BLEVINS
Division Director
Compliance Assurance and Enforcement Division
U.S. EPA, Region 6

Date: __6/20/13__

THOMAS RUCKI
Office of Regional Counsel
U.S. EPA, Region 6
1445 Ross Ave., Suite 1200 (6RC-EW)
Dallas, TX 75202
Phone: (214) 665 2759

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of <u>United States v.</u> <u>Great Lakes Chemical Corporation</u>.

FOR DEFENDANT GREAT LAKES CHEMICAL CORPORATION:

Date: June 24, 2013

BILLIE S. FLAHERTY
Senior Vice President, General Counsel & Secretary
Chemtura Corporation

Date: June 28, 2013

DONALD C. BLUEDORN II
TIMOTHY C. WOLFSON
Babst, Calland, Clements & Zomnir, P.C.
Two Gateway Center
Pittsburgh, PA 15222
Phone: (412) 394-5400

-36-

# APPENDIX A

## The West Side Sump Pump Station Work Plan

Great Lakes Chemical Corporation

Central Plant (NPDES # AR0001171)

El Dorado, Union County, Arkansas

# TABLE OF CONTENTS

1.0 INTRODUCTION
    1.1 Location
    1.2 Design and System Operation

2.0 CLEARING AND GRUBBING
    2.1 Description

3.0 EARTHWORK
    3.1 Description
    3.2 General

4.0 POLYVINYL CHLORDIE (PVC) PRESSURE PIPE
    4.1 Description

5.0 DUCTILE IRON PIPE AND FITTINGS
    5.1 Description

6.0 VALVES AND APPURTENANCES
    6.1 Description

7.0 CONCRETE
    7.1 Description

8.0 EQUIPMENT AND CONTROLS
    8.1 Description

9.0 EROSION CONTROL
    9.1 Description
    9.2 Silt Fence
    9.3 Fiber Rolls
    9.4 Straw Mulch
    9.5 Restoration at Stream Crossings and Creek Banks

10.0 ELECTRICAL REQUIREMENTS
    10.1 Description

11.0 CONCLUSION

ATTCHMENTS:
    Overall Project General Layout
    West Side Sump General Layout

2

## 1.0 INTRODUCTION

Pursuant to the Consent Decree between the United States of America and Great Lakes Chemical Corporation, Great Lakes Chemical Corporation has agreed to construct and operate a West Side Sump Pump Station, a system of storage and conveyance capable of transferring wastewater flow from the West Side Sump to the Joint Pipeline. This system, upon completion, will be capable of capturing all dry weather flows reaching the West Side Sump, as well as all flows from a 24-hour, two-inch rain event and conveying such flows to the Joint Pipeline. The Joint Pipeline will carry wastewater to a permitted outfall to the Ouachita River and will be built in accordance with an agreement between and among Lion Oil Company, El Dorado Chemical Company, the City of El Dorado Water Utility, and Great Lakes Chemical Corporation.

All flows up to the 24-hour, two-inch rain event will be conveyed through approximately one mile of 12-inch PVC below-ground pipe from the West Side Sump to the East Storm Water Pond ("ESWP"), which has an approximate capacity of five million gallons. The ESWP is where the Ouachita River Joint Pipeline Pump Station will be located. The West Side Sump Pump Station is scheduled to be completed by August 31, 2013, and its operation is contingent upon the completion and availability of the Joint Pipeline.

This work plan comprehensively sets forth the scope of work and operational narrative of the West Side Sump Pump Station.

### 1.1 Location

The West Side Sump Pump Station is located in the western portion of the plant property, along an existing access road. From the pump station, a conveyance pipeline is routed to the ESWP, which is located in the northeastern portion of the plant property. Please refer to the attached "Overall Project General Layout."

### 1.2 Design and System Operation

The design of the pump station is as follows: Two centrifugal pumps were selected to capture dry weather flows. The two pumps will use the existing sump to collect flows and will be capable of pumping to the ESWP or Process Water.

The vertical turbine pump ("VTP") and the reconstructed West Side Sump are designed to capture runoff from a 24 hour, two-inch rain event. The VTP will sit on a pre-cast concrete wet well that draws water from the newly constructed West Side Sump "surge basin." Additionally, the expanded basin was designed to retain the peak surge from a two-inch rain event until the VTP can pump the retained volume to the ESWP. Note that some variations to the above-referenced design

3

or operation may be made during the construction process to adjust for field conditions, materials used, and other appropriate reasons.

The pump station is designed with the following pump control logic built into the control panel/float switch system:

1. Centrifugal pumps turn on whenever there is water in the sump (dry weather flows).
2. Centrifugal pumps turn off whenever the sump level reaches the level that initiates the VTP.
3. The VTP pump turns off whenever the wet well level (and sump) is lowered to the VTP minimum submergence level.
4. Centrifugal pumps turn back on.
5. Flow meters will track the amount of water transferred to the ESWP.
6. Capabilities will be in place to re-circulate water within the West Side Sump Surge Basin, and/or to route water to Process Water, in case spill conditions affecting the drainage basin render the water unsuitable for the Ouachita River Joint Waste Water Pipeline.

## 2.0 CLEARING AND GRUBBING

### 2.1 Description

Clearing and grubbing consists of clearing, grubbing, and moving all vegetation and foreign objects, within the limits of the project construction, which require removal in order for the project to be constructed in accordance with the Construction Drawings and Specifications ("Drawings").

For pipeline construction, grubbing shall be carried out for the full width of the construction easement (30 feet) to a depth of 24 inches. Note that some variations to the above-referenced dimensions may be made during the construction process to adjust for field conditions, materials used, and other appropriate reasons.

## 3.0 EARTHWORK

### 3.1 Description

Earthwork shall consist of the site preparation of the pump station sump area including the following: excavating, hauling or placing excavation, spreading, compacting of backfill, and finish-dressing all areas to the alignment, grades and cross-sections as shown on the Drawings. Note that some variations to the above-referenced work may be made during the construction process to adjust for field conditions, materials used, and other appropriate reasons.

4

## 3.2 General

All excavation and construction shall ensure positive drainage in case of rainfall. Backfill of all Work shall be performed in lifts and compacted as necessary to resist settlement with the exception to the wet well foundation. All construction features shall be marked in a manner easily traced, if left underground.

## 4.0 POLYVINYL CHLORIDE [PVC] PRESSURE PIPE

### 4.1 Description

The West Side Sump Pump Station will be connected to the ESWP by a new force main pipeline. The force main pipeline will be constructed using bell and spigot PVC pipe with a nominal diameter of 12 inches. The pipeline will generally follow the route depicted on Drawing C1, Overall Project General Layout. The pipe material will be selected to sustain the maximum anticipated operating pressures of the West Side Sump Pump Station. The PVC pipeline shall have warning tape placed directly above it in the trench and a functional system of tracer wire and test terminals/markers for future location of the pipeline during site construction/maintenance activities.

Note that some variations to the above-referenced pipe may be made during the construction process to adjust for field conditions, materials issues, and other appropriate reasons.

## 5.0 DUCTILE IRON PIPE AND FITTINGS

### 5.1 Description

Ductile iron pipe and fittings shall be used where designated in the Drawings. The ductile iron pipe used for this project shall meet the internal pressure limit required and will vary in nominal diameter. Ductile iron pipe shall be either bell and spigot or mechanically joined. Ductile iron fittings used for bends and pipe transitions will be restrained joint type.

Note that some variations to the above-referenced pipe may be made during the construction process to adjust for field conditions, materials issues, and other appropriate reasons.

## 6.0 VALVES AND APPURTENANCES

### 6.1 Description

Valves and appurtenances for this project consist of check valves, gate valves, and air release valves. Valves will be used as designated in the Drawings to manipulate the capture and conveyance system to allow for flexibility in transferring collected water to either the ESWP or

5

Process Water, or in recirculating the water within the West Side Sump Surge Basin, and to prevent the unintended backflow of water through pumps. Valves shall be constructed of durable materials and shall be compatible with the fluids for which they are designed.

Automatic float-controlled air/vacuum release valve(s) will be installed at appropriate locations in the force main pipeline to allow the escape of entrained air from the pipeline, preventing "air lock" of the system, and to prevent collapse of the pipeline caused by flow-induced negative internal pressures.

Note that some variations to the above-referenced valves may be made during the construction process to adjust for field conditions, materials issues, and other appropriate reasons.

## 7.0 CONCRETE

### 7.1 Description

Concrete for this project will be used for reaction blocking at pipeline bends, valve box collars, above ground pipe supports, and slabs. The concrete used for this project shall be designed for the following conditions:

> a. Minimum sacks of cement per cubic yard: Five (5).
> b. Slump range: Two to four (2-4) inches.
> c. Minimum 28-day compressive strength: 2,500 psi.
> d. Air Content: Not applicable.
> e. Cement: Portland Cement Type II

Note that some variations to the above-referenced concrete may be made during the construction process to adjust for field conditions, materials issues, and other appropriate reasons.

## 8.0 EQUIPMENT AND CONTROLS

### 8.1 Description

The project includes a functional pumping station unit with a fixed-speed drive control system. Pumps and motors shall be installed in strict accordance with manufacturer's recommendations. Pumps and controls shall be capable of handling all flows up to the 24-hour, two-inch rain event and covey these flows through approximately one mile of 12-inch PVC below-ground pipe from the West Side Sump Pump Station to the ESWP.

Note that some variations to the above-referenced equipment and controls may be made during the construction process to adjust for field conditions, materials issues, and other appropriate reasons.

6

## 9.0 EROSION CONTROL.

### 9.1 Description

Erosion control shall consist of the establishment of permanent live vegetation on all areas disturbed by construction, and the protection of adjacent property from siltation and sediment build-up caused by grading operations and construction during this project.

The major items of erosion control are temporary erosion checks, the furnishing and planting of grass seed, the furnishing and placement of vegetative materials for mulch, and the maintenance and/or watering of these items.

Note that some variations to the erosion/sediment controls may be made during the construction process to adjust for field conditions, materials issues, and other appropriate reasons.

### 9.2 Silt Fence

Silt fences shall be installed at all areas disturbed by construction activities as needed to minimize sediment transport by storm water runoff.

### 9.3 Fiber Rolls

Fiber Rolls is another option that may be used at areas disturbed by construction activities as needed to minimize sediment transport by storm water runoff.

### 9.4 Straw Mulch

Straw mulch shall be utilized where directed to provide initial protection for areas against washouts and erosion.

### 9.5 Restoration at Stream Crossings and Creek Banks

Stream banks with slopes steeper than 2b:1v and stream bottoms shall receive rip rap protection, and banks flatter than 2:1 shall be covered with erosion control blanketing ("ECB"); in both cases the protection shall extend (for rip rap) five feet past the disturbed trench area in both the upstream and downstream directions. ECB shall have a similar minimum coverage and shall be placed over all areas where bank vegetation has been sufficiently disturbed. Alternative erosion/sediment control practices may be utilized.

7

## 10.0 ELECTRICAL

### 10.1 Description

Electrical services shall be complete in every respect to provide a functioning electrical power distribution system for the pumps, controls, and instrumentation. Note that some variations to the electrical services may be made during the construction process to adjust for field conditions, materials issues, and other appropriate reasons.

## 11.0 CONCLUSION

This work plan fully documents the planned design and construction of the West Side Sump Pump Station referenced in the Consent Decree. The design, construction, or operational details are subject to modification during the construction process, as discussed in the foregoing.

West Side Sump Pump Station

Attachments:

Overall Project General Layout
&
West Side Sump General Layout



